**Application of Christian J. JANSEN, Jr.**

**Patent Appeal No. 75-556.**

United States Court of Customs and Patent Appeals.

Nov. 20, 1975.

Rehearing Denied Jan. 15, 1976.

John Cameron McNett, Woodard, Weikart, Emhardt & Naughton, Indianapolis, Ind., attorney of record, for appellant.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents; Jack E. Armore, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This appeal is from a decision of the Patent and Trademark Office Board of

Appeals, adhered to on reconsideration, affirming the examiner's rejection of claims 1–4, 6, 8, 9 and 11 in application serial No. 57,302, filed July 22, 1970, for "Hematinic-Vitamin Preparation." We affirm.

### The Invention

According to appellant's specification, an inadequate supply of either vitamin $B_{12}$ (cyanocobalamin) or folic acid in the human diet results in fewer healthy red blood cells, producing the symptoms of anemia. Whether the condition is due to vitamin $B_{12}$ deficiency or folic acid deficiency, or to a combination of the two, is difficult, expensive, and time consuming to determine. The determination has been deemed critical. Treatment of a vitamin $B_{12}$ deficient patient with folic acid alone may result in an apparent cure or "masking" of continuing neurological effects of the deficiency and possible irreversible injury or death. Similarly, masking of a folic acid deficiency by administration of vitamin $B_{12}$ alone may result in death, according to appellant's teachings.

Within this context appellant has proposed a solution whereby an oral hematinic multifactor vitamin preparation is administered, the preparation containing both vitamin $B_{12}$ and folic acid, each in the amount of at least .1 milligram. Appealed claims 1 and 11 are illustrative:

1. In an improved oral multifactor hematinic vitamin preparation which contains vitamin $B_{12}$ and folic acid, the improvement which comprises having at least 0.1 milligram of vitamin $B_{12}$ and at least 0.1 milligram of folic acid, in an approximate one to one ratio.

11. A method of treating the preventing anemia in humans which comprises administering a daily oral dosage of a vitamin preparation containing at least .5 mg. of vitamin $B_{12}$ and at least .5 mg. of folic acid, whereby anemia can safely be treated orally without determining whether it is caused by folic acid deficiency or by vitamin $B_{12}$ deficiency.

### The Rejection

The references cited by the examiner are as follows:

| | | |
|---|---|---|
| Jurist | 2,748,054 | May 29, 1956 |
| Sahyun | 2,804,423 | Aug. 27, 1957 |

Merck Index 105, 455, 467–68, 729, 892, 918–19, 1036–37, 1112–13 (8th ed. 1968)

Physicians' Desk Reference (PDR) 738, 915, 1084, 1104, 1129 (1968)

Waife et al., Oral Vitamin $B_{12}$ without Intrinsic Factor, 58 Annals of Internal Med. 810–16 (1963).

The board added "pages 752, 811, and 812 to the Examiner's citation of Physicians' Desk Reference (PDR)," noting that the Peritinic and Zentinic preparations described therein correspond generally to certain "widely distributed formulation[s]" alluded to in appellant's specification.

What the prior art teaches is not in dispute. Appellant has admitted that it is well known to treat a patient having folic acid deficiency with folic acid alone in the amounts claimed. It is also well known to administer folic acid in an oral preparation. The oral administration of vitamin $B_{12}$ alone in the amounts claimed is disclosed in the *Waife et al.* reference, coauthored by appellant. Oral preparations containing both vitamin $B_{12}$ and folic acid are also known, although such combination preparations do not contain the amounts claimed by appellant. Zentinic and Peritinic, for instance, are commercially available oral multifactor hematinic vitamin preparations containing .05 milligram of folic acid and .05 milligram of vitamin $B_{12}$, exactly half the minimum recommended dosage claimed by appellant.

The board had the following comments relative to appellant's asserted contribution, which it referred to as a "shotgun approach" to the control of undifferentiated anemia:

We refrain from becoming involved in the medical controversy over the rationality of the shotgun approach. We realize that some condemn the shotgun

technique in that it encourages slovenly diagnosis and may result in dangerous "overkill." The contrary argument is that if the shotgun system is not dangerous, no harm is done in administering a broad spectrum of combined therapeutic agents. Our only concern is whether a shotgun composition is obvious rather than whether some · practitioners would condemn such a composition.

The essence of appellant's position is that because combination therapy is viewed with disfavor by some, it must be unobvious to formulate a combination therapeutic preparation. We cannot agree with appellant's conclusion, despite his emphasis on the premise.

The board perceived "nothing unexpected" in appellant's composition, noting that it would be "entirely expected that a combination preparation may be used for an undifferentiated disorder." Moreover, it was determined that appellant's claims, specifying "at least 0.1 milligram of vitamin $B_{12}$ and at least 0.1 milligram of folic acid," were difficult to distinguish from "a double strength tablet" of Zentinic or Peritinic. It was further found that a "double strength tablet" of Theragran Hematinic, which contains .05 milligram of vitamin $B_{12}$ and .5 milligram of folic acid, would be pertinent to claim 8, which does not require a one-to-one ratio of vitamin $B_{12}$ to folic acid. On reconsideration the board clarified its position . somewhat by commenting:

> As noted in our decision, vitamin $B_{12}$ and folic acid have been included in a single composition and, with respect to dosages, the recommended two-tablet daily dose of Peritinic or Zentinic, corresponds to the terms of claims 1, 2, and 8, with a two-tablet daily dose of Theragran Hematinic also corresponding to the terms of claim 8.

## OPINION

We agree with the board that it would have been obvious to formulate and use a composition containing both folic acid and vitamin $B_{12}$ in the recognized individual therapeutic dosages.

Appellant's position is that he has solved the problem of treating anemia in an unobvious way. Appellant relies upon evidence, also considered by the board, tending to show that some or perhaps even most persons having ordinary skill in the art would regard the claimed preparation as unsafe for treating certain types of anemia. A letter from Marvin Seife, M.D., Acting Director, Office of Scientific Evaluation, Bureau of Drugs, Food and Drug Administration stated:

> Your views on the safety and efficacy of your proposed product are not shared by the preponderance of contemporary scientific medical opinion.

Dr. Seife's letter quoted from a medical textbook: *

> It is therefore incumbent on the physician *never* to prescribe a multivitamin preparation containing more than .1 mg. of folic acid per daily dose unless he is reasonably sure that the patient does not have vitamin $B_{12}$ deficiency.

A similar statement, apparently reflecting the opinion of the American Medical Association, is expressed in *AMA Drug Evaluations* 61 (1st ed. 1971):

> Combination therapy is indicated only when it can be clearly demonstrated that one type of anemia is superimposed upon another. Even under these circumstances, a combination of *the specific agents lacking in the particular anemias diagnosed are the only agents that should be used to treat the anemias.* Not only is avoidance of mixtures superior therapy from the standpoint of good medical practice, but also it may be absolutely necessary because the preferred route of administration of two different therapeutic agents may be entirely different. For example, an iron deficiency anemia superimposed on a pernicious anemia re-

* Goodman & Gilman, *The Pharmacological Basis of Therapeutics,* 1440 (4th ed. 1970).

quires both iron and cyanocobalamin for treatment. However, the oral route is preferred for administering iron, whereas cyanocobalamin should be given by intramuscular or deep subcutaneous injection for best results.

██ Appellant raises an unnecessary issue in arguing that the board has jurisdiction to consider opinions of the Food and Drug Administration and others concerning the safety and effectiveness of the claimed composition insofar as such opinions may relate to the question of obviousness under section 103, citing *In re Anthony,* 414 F.2d 1383, 56 CCPA 1443 (1969). The board properly cited *In re Anthony* as authority for its reversal of a rejection under 35 U.S.C. § 101 and thereafter proceeded, in its review of the rejection under 35 U.S.C. § 103, to consider fully the opinion evidence respecting safety submitted by appellant. Nothing in *In re Anthony* militates against jurisdiction of the board to consider such evidence in relation to the question of obviousness. The board determined, however, that such evidence was not persuasive of unobviousness in the claimed subject matter. We agree with that determination.

Whether members of the medical community agree or disagree with appellant's "shotgun approach" to treating undifferentiated anemia cannot control the determination of whether appellant's claimed combination product and method would have been unobvious to a person having ordinary skill in the art. The prior art is replete with examples of commercially available hematinic vitamin preparations containing combinations of vitamin $B_{12}$ and. folic acid. Hence, there is nothing new or unobvious in the combination per se. Neither is there anything new or unobvious about the individual dosage levels for vitamin $B_{12}$ and folic acid employed by appellant.

██ Appellant asserts a theory concerning the manner in which the claimed composition and method effectively treat undifferentiated anemia. We express no view on the merit of that theory. Appellant's theory, however, cannot remove the effect of the prior art, which establishes that the claimed composition and method would have been obvious to one of ordinary skill in the art.

Accordingly, the decision of the Patent and Trademark Office is *affirmed.*

*Affirmed.*