Aumonb, Judge,
 

 delivered the opinion of the court:
 

 This is an appeal from the decision of the Patent Office Board of Appeals 'affirming the rejection of claims 13 to 16 of appellant’s application entitled “Pump.”
 
 [1]
 

 The invention relates to an improvement in a rotary impeller centrifugal pump and particularly to a pump capable of handling liquids containing substantial amounts of suspended solids. It is stated that in the past pumps have required frequent replacement due to suspended solids getting into close clearances on rotating or sliding parts, thus causing rapid wear and consequent loss of efficiency.
 

 The present invention alledgedly overcomes this problem by opening such clearances to an extent where the suspended solids can pass through without “grinding” between the relatively moving surfaces. High efficiency is maintained, despite the open clearances, by using an enclosed impeller, particularly in combination with backward sloping vanes forming substantially constant cross-sectional impeller passages.
 

 The pump impeller and impeller housing are shown in Fig. 8 of appellant's application.
 

 Impeller rotor 10 is comprised of top and bottom plates 12 and 14 and a series of equally-spaced spiral blades 16. An intake throat continuous into the interior of the rotor 10 is shown at 18. The bore of central drive collar 20, carried by top plate 12, is fitted to the end of drive shaft 22. The latter extends upward and is journaled at spaced bearings to a stationary support structure, to which the pump housing is rigidly connected by tubular pedestal column 46. The impeller housing outer wall 28 is spiral for most of its periphery with gradually increasing radius and at one side becomes tangential extending along a tangent to a discharge outlet.
 

 
 *774
 

 The most significant feature of the invention is described in the specification 'as follows:
 

 An intake port and lower seal hub 19 is welded to bottom plate 26 to surround a central hole therein. A lower inlet, seal 41 is seated with a press fit in said lower seal hub 19.
 

 An upper huh 40 is welded to top plate 38 to surround a central hole corresponding to that in plate 26 and has an inwardly directed annular flange 43 closely fitting the third step of the stepped drive shaft 22 with a clearance only sufficient to avoid friction and allow suspended solids to pass without grinding or jamming. An upper seal 42 is engaged in the hub 40 by a press fit and acts as a seal and bearing for the shaft 22, or more particularly, for drive collar 20 which is bolted onto shaft 22.
 

 The seal bearings 41 and 42 and the corresponding journal's (i.e., drive collar 20 and intake collar 17) have clearances which are sufficient to allow potentially abrasive or potentially jamming suspended particles to freely flow therethrough. As the drive collar 20 is a tight fit pressed home by the nut on the end of shaft 22, no leakage can occur there from the interior of the rotor. The relatively loose fit of the seal 42 on the shaft, however, would permit leakage of liquid upward from the space between the rotor 10 and the top plate 38 of the housing.
 

 Claim 13 is illustrative:
 

 13. A centrifugal pump adapted for handling liquid suspensions of particulate matter with low wear, long life, ¡and high efficiency, comprising a pump housing, an enclosed impeller rotatable in said housing, a liquid suspension discharge
 
 *775
 
 outlet leading from the peripheral portion of said housing, a rotatable shaft carrying said impeller mounted to one end and extending out an axial opening of said housing, said impeller having an axial inlet with external access through an axial opening of the pump housing, seal means for sealing the axial clearances between the housing and the shaft-and-impeller assembly, said seal means having clearances at least 0.003 inches wide which are just sufficient to allow substantially free passage of particulate suspended matter, said shaft-and-impeller assembly being so constructed and mounted relative 'to the housing as to prevent significant relative displacement thereby to maintain sufficient clearances at all times.
 

 Claim 14 is dependent upon claim 13 and ’adds the limitation of the central intake hub extending through the opening in the pump housing. Claim 15 further restricts claim 14 in defining the location of the hub. Claim 16 depends from claim 14 and describes the impeller as further including backward sloping vanes shaped to provide constant cross-sectional area for liquid passage therebetween. Four claims directed to the pump and two claims to a transition mouthpiece have been allowed.
 

 The appealed claims were rejected as unpatentable under 35 USC 103. The references relied upon are:
 

 Saborio_ 1, 988,875 Jan. 22, 1935
 

 Ardrey_ 2,006,727 July 2, 1935
 

 Murphy_ 2,165, 808 July 11, 1939
 

 Umbricht_ 2, 890, 660 June 16, 1959
 

 Lung_ 2, 954, 739 Oct. 4, 1960
 

 Sweeney et al. (Sweeney) 3, 048,384 Aug. 7, 1962
 

 Lung _ 3, 070,026 Dec. 25, 1962
 

 Mohle (Germany)_ 809,758 Aug. 2, 1951
 

 In view of the board’s treatment of the rejection and the parties’ arguments, we need only fully consider three of the cited references.
 

 The German patent discloses two species of centrifugal pump functioning without mechanical friction in the absence of any stuffing box for the shaft that extends through the pump casing. The shaft is carried by a drive casing by vertically spaced roller bearings. The pump casing is fixed to the drive casing by means of bolts which function much as appellant’s column 46. The species reproduced in the figure below has an enclosed impeller
 
 a
 
 with internal radial vanes, and also a central intake hub
 
 b
 
 extending out through an opening in the casing
 
 g
 
 opposite to the shaft. The drawing shows radial clearances between the shaft and hub
 
 b
 
 on the one hand and the casing
 
 g
 
 on the other. The specification indicates that the fluid pressure is balanced through the clearances / between the faces of impeller
 
 a
 
 and casing y, due to centrifugal force. In the other pump species this centrifugal effect is intensified by an arrangement where the faces of the impeller
 
 *776
 
 are provided with, radial ribs intercepted by fixed annular ribs of the casing
 
 g.
 
 The specification is silent as to the nature of the material to be pumped.
 

 Lung ’026 discloses an enclosed impeller centrifugal pump intended to handle sandy water. The patentee discusses seal clearances thusly:
 

 * ⅜ * those portions of the impeller which operate as bearing surfaces with respect to surrounding portions of the diffuser or casing can be initially produced to provide adequate clearance therepast for particles of sand present in the water when the pump is first placed in use but which thereafter will swell to an extent establishing proper bearing relation with these surrounding parts.
 

 *******
 

 * * * it is desirable to maintain a clearance of the order of .020-.030 inch on a diameter for the hub in the bearing sleeve after the swelling of the impeller has been completed.
 

 It is stated that it is significant for the purposes of the invention that “there are no bearings for the pump shaft except the support provided by the several impeller hubs in the bearing sleeves of their associated diffusers.” This is said to mean that “the bearing fit will initially be too loose for normally preferred operation
 
 *
 
 * In this regard, Lung further states:
 

 * * * sin.ee the shaft is not supported in a fixed radial position with respect to all of the diffusers, it can. have some side play to provide greater clearance for sand particles on one side of the shaft than the other if such condition should be necessary, especially during the early period of use when both this clearance and the concentration of sand in the water are normally near their máximums.
 

 Murphy discloses an enclosed impeller for a centrifuga1 pump, particularly for pumping heavy liquids such as “slip,” having swept back vanes affording substantially uniform cross-sectional area of ■the fluid passageways there-between.
 

 The examiner rejected claims 13 through 15 under 35 USC 103 as unpatentable over the German patent in view of Ardrey and Sweeney,
 
 *777
 
 with attention directed to the Lung patents. Claim 16 was rejected along with claims 13-15 combined with Murphy or Saborio.
 

 In affirming the examiner, the board recognized that there was no need to rely on Ardrey, Sweeney, 'and Umbricht, in view of appellant’s discussion on claim 13 in relation to the German patent, and went on to say:
 

 * ⅜ * we find the structure of claim 13 present in the German patent except for the qualification of the seal means being at least 0.003 inches wide for allowing substantial free passage of particulate suspended matter.
 

 The Examiner has directed attention to the Lung patents in his Answer and we note particularly patent No. 3,070,026. The pump disclosed there is designed for pumping water containing sand * * *. Although there is disclosed large clearances for the initial accommodation of large quantities of sand, the clearances are reduced by swelling of the impeller and maintained at a clearance of .020-.030 inches * * *. Both impeller bearings, adjacent bearing sleeve 62 and flange 55 respectively, provide for clearances at least 0.003 inch wide as claimed by appellant.
 

 We do not find the statement in the last four lines of claim 13 to structurally define any difference over the German patent as bearings are shown supporting the shaft and impeller in the German patent similar to appellant’s bearing support and there is no reason to believe the structure would not prevent relative displacement to maintain any set predetermined clearance.
 

 We are in agreement with the Examiner that it would be obvious t® one with ordinary shill in the art with the teachings of the secondary references especially Lung, 3,070,026, to provide the claimed clearances in the pump structure of the German patent.
 

 With respect to claim 16, the board felt that:
 

 * * * the patents to Murphy and Saborio clearly show forming the liquid passages with substantialy constant cross-section and this teaching in the art in conjunction with the other secondary references makes it obvious to one with ordinary skill in the art to use such an impeller form in the German patent.
 

 While considering appellant’s patent (Umbricht) to be merely cumulative, the board noted that it had given “careful consideration” to the Arnold affidavit concerning the operation of the device covered by that patent.
 

 Appellant attacks the decision of the board by arguing that the German patent, in addition to being silent about the nature of the material pumped, actually teaches away from the major limitation in claim 13 since the patent teaches a pump structure designed “to prevent the escape of pressurized fluid from the casing around the shaft” and specifically states “the fluid [pressure] is balanced through the clearance / * * Furthermore, appellant argues that the figure of the German patent relied on is never identified and discussed in the specification and therefore nothing in the figure would suggest usefulness for pumping abrasive slurries. One skilled in the art, appellant alleges,
 
 *778
 
 would note that the figure is “an ambiguous, European-style, diagrammatic patent drawing which probably has its clearances overemphasized * *
 

 Appellant argues that Lung, although disclosing a clearance after swelling of 0.020-0.030 inch, does not satisfy the claim requirement “to allow substantially free passage of particulate matter,” since the patentee states that
 
 initially
 
 there is provided adequate clearance but
 
 thereafter
 
 there is swelling to an extent establishing proper bearing relation. Additionally, Lung is said to permit side play in the shaft, something which cannot be tolerated in appellant’s pump where sufficient clearances must be
 
 maintained.
 
 Since Lung is the only one concerned with handling particulate matter in liquid, it is urged that his teaching should control in the combination.
 

 The solicitor counters by arguing that one skilled in the art would recognize that the embodiment shown in the figure of the German patent relied on is more prone to leakage about the shaft
 
 m
 
 and impeller intake hub
 
 b.
 
 If one were interested in using such a frictionless pump for handling liquids containing particulate material, he might well forego the preferred embodiment .and provide ample clearances exceeding 0.003 inch in the pump of the figure relied on.
 

 Claim 13, the solicitor contends, does not preclude relative displacement between the shaft-and-impeller assembly as shown by Lung, yet he also states that the board discussed the final clause of claim 13 and found it shown by the German patent.
 

 We cannot accept the board’s view or the solicitor’s argument in support thereof. While we agree with the solicitor that the German patent is a reference for all it clearly shows,
 
 In re
 
 Moreton, 48 CCPA 875, 288 F. 2d 708, 129 USPQ 227, and further that all [2] disclosures in a reference must be evaluated for what they fairly teach one of ordinary skill in the art, including nonpreferred embodiments,
 
 In re
 
 Boe, 53 CCPA 1079, 355 F.2d 961, 148 USPQ 507, we find, as urged by appellant, that the German patent teaches a structure designed to prevent the escape of fluid and that it specifically states that “the fluid [pressure^ is balanced through the clearance /.” Significantly, we note that the figure relied on by the Patent Office is the only one which has the letter / applied to show the clearance. Thus, we agree that the German patent teaches the opposite of the major limitation of claim 13, or at best, is silent on the point of permitting leakage.
 

 Moreover, we do not feel that the deficiency in the German patent is supplied by Lung. We are convinced, as appellant points out, that a consideration of the entire disclosure of Lung fails to reveal a teaching of appellant’s invention. We stated in
 
 In re
 
 Wesslau, 53 CCPA 746, 353 F. 2d 238, 147 USPQ 391, “It is impermissible within the framework
 
 *779
 
 of section 103 to pick and choose from any one reference only so much of it as will support a given position, to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one of ordinary skill in the art.” It seems clear that Lung is concerned with providing adequate clearance for sand particles
 
 initially
 
 only and thereafter a proper bearing support is established. Lung teaches that it is significant that there are no bearings for the pump shaft except the support provided by the impeller hubs in the bearing sleeves of their associated diffusers. Lung states:
 

 * * * ii the parts are fabricated to provide proper metal to metal bearing clearances, severe damage from sain [sand] might result. Conversely, if the parts were fabricated of metal in proportions providing adequate passage for sand particles through the bearing clearances, there would be too much play between these parts, which would cause excessive noise in operation as well as ultimately tending to result in damage to the parts as a result of this undue play.
 

 Lung met this problem by making the impeller of swellable plastic. Appellant solves it by preventing, in the language of claim 13, “significant relative displacement thereby to maintain sufficient clearance at all times.”
 

 We are unable to sustain the board’s rejection on the basis of the record and arguments presented. The decision is, therefore,
 
 reversed.
 

 Worley,
 
 G.J.,
 
 dissents.
 

 Judge Smith participated in the hearing of this case but died before a decision was reached.
 

 [1]
 

 Serial No. 407,272 filed October 22, 1964.