No. 76–488. ROANWELL CORP. v. PLANTRONICS, INC. C. A. 2d Cir. Certiorari denied.

MR. JUSTICE WHITE, with whom MR. JUSTICE BRENNAN joins, dissenting.

Petitioner, the unsuccessful defendant in respondent's patent infringement suit, challenges the validity of respondent's patent on the ground that the invention was obvious to a person having ordinary skill in the art at the time of invention. The patented device is a headset used for the transmission and reception of voice communications by telephone

operators, aircraft pilots, air traffic controllers, and others. The District Court found, and the record clearly demonstrates, that all of the individual elements[1] of the patented headset were used in the prior art, although no single item of the prior art used the complete combination. 403 F. Supp. 138, 142 (SDNY 1975). The court nevertheless held that the invention was not obvious on the basis of evidence showing a long unfulfilled need, prior failures in satisfying that need, and immediate acceptance and substantial commercial success. *Id.*, at 148.[2]

This Court long ago established that the *sine qua non* of patentability is "invention" and that the protection of the patent law does not extend to an "improvement [that] is the work of the skilful mechanic, not that of the inventor." *Hotchkiss* v. *Greenwood,* 11 How. 248, 267 (1851). In 1952, Congress codified this judicial standard by requiring that the improvement sought to be patented "would [not] have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U. S. C. § 103.[3]

---

[1] Respondent's headset consists of a miniature microphone and miniature receiver mounted in a small capsule supported near the wearer's ear; a self-supporting, bendable, acoustic tube extending from the microphone to a point adjacent to the wearer's mouth; and a similar tube extending from the receiver and having at its outer end a plug inserted in the wearer's ear canal. The device is supported by clipping the capsule to a pair of eyeglasses or a headband or by a post-auricular housing hooking over the ear.

[2] The Court of Appeals for the Second Circuit affirmed in a short, uncritical, *per curiam* opinion. 535 F. 2d 1397 (1976).

[3] Section 103 provides in full:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

Whether referred to as "invention" or "nonobviousness" the requirement is based on the constitutional command that patents be used to "promote the Progress of . . . useful Arts." Art. I, § 8, cl. 8; *Graham* v. *John Deere Co.*, 383 U. S. 1, 5–6 (1966). Patents may not be issued to remove existing knowledge from the public domain or to limit access to materials already available.

Where, as here, the patent claim is for a combination of existing elements, "[c]ourts should scrutinize [such] claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." *Great A. & P. Tea Co.* v. *Supermarket Corp.*, 340 U. S. 147, 152 (1950). When a device consists of a mere aggregation of segments of the prior art, there is an increased danger that a patent will withdraw into its monopoly what is already known and add nothing to the sum of useful knowledge. Thus, to be patentable, a combination of elements must produce something more than the sum of the pre-existing elements; there must be a synergistic result that is itself nonobvious. *Ibid. Anderson's-Black Rock* v. *Pavement Co.*, 396 U. S. 57, 61 (1969); *Sakraida* v. *Ag Pro, Inc.*, 425 U. S. 273, 282 (1976).

The District Court here made no finding that the combination produced a synergistic or any other nonobvious result. This failure is not surprising. Each element in the combination had previously been used to perform the same function it now performs in respondent's device. Although no one had used the full combination of all elements, each element had been combined with one or more of the others in a variety of different headsets. Some of the elements in respondent's invention appeared as long ago as 1878 in a British patent (Pritchett). More recently, two patented inventions used every part of respondent's combination in the same manner the parts were used by respondent. A headset patented in 1949 (Olney) employed a headband holding both a receiver

and microphone, and an acoustic tube carrying the sound from the user's mouth to the microphone. Received messages, however, were heard through a flat earpiece resting on the external ear. The 1961 Guttner patent of a hearing aid perfected the concept of miniature electronic equipment mounted so as to minimize wearer discomfort. Guttner used a post-auricular housing fitting behind the external ear; the housing contained a miniature microphone and receiver connected to each other by an amplifier. A flexible acoustic tube extended from the receiver and terminated with a plug in the ear canal. Although other devices also made use of miniature electronic equipment, acoustic tubes, and ear plugs, the District Court expressly found that these two examples of the prior art contained all the necessary elements and required only slight modification to produce respondent's device:

> "Adding Olney's voice tube to Guttner's device, and modifying Guttner's electrical circuit, as also taught by Olney, so that the microphone and the receiver, instead of being connected to one another through an amplifier, are connected to separate external transmitting and receiving circuits, would produce the complete combination . . . ." 403 F. Supp., at 143.

Rather than ending its inquiry with this total lack of any nonobvious improvement over the prior art, the District Court went on to consider the need for respondent's device, prior failures in "discovering" it despite intensive efforts, and respondent's commercial success.[4] Based solely on its his-

---

[4] After relating an admittedly impressive account of prior failures, the court summarized as follows:

"The record establishes that there was a long-recognized need for a lighter, more comfortable headset to eliminate the fatigue and pain, rather extravagantly termed 'ear torture,' involved in the wearing of all previously known headsets over extended periods. A number of organizations with access to the best minds in the field, including the airlines, the U. S. Air Force and FAA, as well as the industry suppliers whom they con-

torical review of various efforts to improve on previously existing devices, the court concluded:

> "Indeed, as simple as the invention now appears, it would seem presumptuous to the point of arrogance to conclude that it was 'obvious' to persons of ordinary skill in the art, notwithstanding their lengthy and unsuccessful struggle to achieve such results." *Id.*, at 148.

The District Judge gave no indication as to what aspect of respondent's device could be considered nonobvious to the assiduous researchers in the field.[5] Rather, he found that the requirement of nonobviousness was satisfied simply because no one had created the successful combination before respondent secured his patent. In so doing, the court departed from the clear teachings of this Court's prior cases.

Although the Court has held that need, prior failure, and commercial success may, "in a close case, tip the scales in favor of patentability," *Goodyear Tire & Rubber Co.* v. *Ray-O-Vac Co.*, 321 U. S. 275, 279 (1944), it has consistently

---

sulted, had been actively searching over a number of years for an answer to the problem, but had found none, despite the availability of all the components ultimately employed by [respondent] Larkin. When Larkin's headset was publicly disclosed, it received almost immediate recognition as an elegant and ingenious solution. It enjoyed impressive commercial success. It revolutionized thinking in the headset industry, overcoming ingrained prejudices, and its concepts have been widely copied by competitors, one of whom aptly termed it the progenitor of a 'new generation of headsets.'" 403 F. Supp., at 148.

[5] Again, the District Court's silence on this key issue is explained by the record and by the court's own findings. The court found that the Guttner device required (1) modification of its electrical circuit and (2) the addition of the Olney voice tube to produce respondent's invention. As found by the District Court, the first change was taught by Olney itself, indicating that it was neither novel nor nonobvious. The second change involved the use of an element that had served its function in numerous headsets since the Pritchett patent of 1878. It hardly requires an inventor to perceive that a hollow, voice-conducting tube on one headset can be used as a hollow voice-conducting tube on another.

and repeatedly rejected the claim that the standard of invention or nonobviousness can be satisfied solely by these "objective" criteria. *Anderson's-Black Rock, supra,* at 61; *Great A. & P. Tea Co.,* 340 U. S., at 153; *Jungersen* v. *Ostby & Barton Co.,* 335 U. S. 560, 567 (1949). In *Graham* v. *John Deere Co., supra,* we reaffirmed and refined the basic test of patentability and firmly established the role of "secondary" factors in the procedure for determining when the standard of nonobviousness is met:

> "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." 383 U. S., at 17–18.

Applying this test in *Graham,* we expressly rejected a claim that the secondary considerations could fill the void left by "exceedingly small and quite nontechnical mechanical differences in a device which was old in the art." *Id.,* at 35–36. The court below should also have rejected that same claim here.

As a general proposition, I agree that our crowded docket does not permit review of every case where error has been committed; but this case seems to me to involve such a significant departure from longstanding principles of patent law that the petition for certiorari should be granted.