Lester L. SMITH, Plaintiff-Appellant and Cross-Appellee,

v.

ACME GENERAL CORPORATION, Defendant-Appellee and Cross-Appellant.

Nos. 77–3282–3.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 15, 1979.

Decided Jan. 15, 1980.

James H. Tilberry, Meyer, Tilberry & Body, Cleveland, Ohio, Keith K. Nicolls, William E. Lucas, McCaleb, Lucas & Brugman, John K. Lucas, Chicago, Ill., for plaintiff-appellant and cross-appellee.

William C. Sessions, Stephen A. Hill, William C. McCoy, Jr., Bosworth, Sessions & McCoy, Cleveland, Ohio, C. Russell Hale, Christie, Parker & Hale, C. Russell Hale, Pasadena, Cal., for defendant-appellee and cross-appellant.

Before LIVELY and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

KEITH, Circuit Judge:

Plaintiff Lester L. Smith appeals from a judgment of the United States District Court for the Northern District of Ohio, Honorable Robert B. Krupansky presiding, dismissing his complaint pursuant to 35 U.S.C. § 271(a) and (b) for patent infringement and declaring the patent claim in suit invalid pursuant to 28 U.S.C. § 2201. Defendant ACME General Corporation (ACME) cross-appeals from the district court's denial of its prayer for attorneys' fees. We affirm Judge Krupansky.

## FACTS

In 1973, Smith, in Tucson, Arizona, and ACME, in San Dimas, California, independently developed an adjustable bottom pivot assembly for supporting and guiding a folding or swinging door.[1] The record dis-

---

1. A door hardware assembly is a combination of metal devices whose purpose is to hold bifold, e. g., closet doors securely in place. Generally "do it yourself" packets are marketed in hardware stores and shopping centers.

closes that neither Smith nor ACME was aware of the other's development of a pivot assembly.

■ On January 28, 1974, Smith filed a patent application for the device which he had developed. The file history (BK. Ex. 128–186) of Smith's patent application shows that it had twelve (12) claims when it was originally filed.[2] The claims stated that the bottom pivot has a pivot block (36) with a socket (57) in its upper face for receiving a pivot pin (37), and with an offset lower anchor portion (61) having serrated teeth for engaging teeth on the jamb bracket.[3]

■ In March, 1974, Smith visited ACME's offices in San Dimas, California and offered to sell or license to ACME the overall hardware assembly, including the bottom pivot, that Smith had developed. However, ACME informed Smith that it was not interested in Smith's assembly and further that ACME was already marketing its own bottom pivot assembly. ACME also gave Smith one of ACME's assemblies.[4] On April 18, 1974, Smith amended his patent application by adding a thirteenth (13th) claim. Claim 13 states that a "support means" interjoins the pivot pin and the jamb bracket in lieu of reciting the pivot block, as was done in the prior claims. It used functional language ("support means") to define the pivot block.[5] Initially, this new claim was rejected by the patent office under 35 U.S.C. § 102 as being fully antici-

pated by "Reference A," the prior art patent No. 3,597,790 to Kellems which is owned by ACME.[6]

On October 17, 1974, Smith amended this new Claim 13. The amended Claim 13 specified that the serrated teeth on the jamb bracket project inwardly from the opposing lengthwise edges of an opening in the jamb bracket to engage the serrated teeth on the pivot "support means." Smith relied upon that tooth arrangement to get Claim 13 allowed over the Kellems patent No. 3,597,-790 which disclosed all of the other features of that claim. Claim 13 is the subject matter of this patent action.

Smith's application for the amended Claim 13 was allowed on October 30, 1974, and the patent issued on February 18, 1975, Patent No. 3,866,658. After failing in his attempt to sell or license hardware assemblies having a five-piece bottom pivot corresponding to that shown in Fig. 2 to 5 of the patent in suit, Smith, in the Spring of 1975, adopted a bottom pivot assembly similar to ACME's (the accused) device.[7]

On August 15, 1975, Smith instituted the present action for infringement against ACME. The complaint alleged that defendant ACME infringed plaintiff's United States Letter Patent No. 3,866,658 (658) "Pivotal Support and Guide Hardware for Folding Doors," by selling and using, and by actively inducing others to use, hardware claimed in this patent in violation of

2. A claim is an assertion of what the invention purports to accomplish. It is basic patent law that claims of a patent define the invention and the "metes and bounds" of the grant. *Brenner v. Manson*, 383 U.S. 519, 534, 86 S.Ct. 1033, 16 L.Ed.2d 69 (1966). Any feature of an invention not stated in the claim is beyond the scope of patent protection. *General Electric Co. v. United States*, 198 U.S.P.Q. 5, n. 3 at 78 (U.S. Court of Claims decided February 22, 1978).

3. Single diagram of '658. [Reproduced as Appendix A]

4. Single diagram of ACME's device. [Reproduced as Appendix B]

5. It is customary, when the "means" term is employed in a claim, to interpret that language as an attempt to use means plus function ter-

minology as permitted by 35 U.S.C. § 112. Smith does not dispute that this more expansive language "support means" was stimulated by the March, 1974 meeting with ACME officials.

6. "Anticipation" is a term of art within patent law meaning the disclosure in the prior art of a thing substantially identical with the claimed invention. *In re Arkley*, 455 F.2d 586 (C.C.P.A. 1972). Invalidation is the result of finding a patent "anticipated" by a disclosure in the prior art under 35 U.S.C. § 102(b).

7. Comparison Diagram Smith and ACME: Defendant's exhibit. [Reproduced as Appendix C]

plaintiff's rights pursuant to 35 U.S.C. § 271(a) and (b). The plaintiff prayed for treble damages, injunctive relief and attorney's fees.

In its answer, ACME denied the infringement and asserted by way of affirmative defense that plaintiff's patent is invalid because:

1) the subject matter of the claims of Patent No. '658 and every material and substantial part thereof had been described in public use or sale in the United States and/or described in patents prior to the invention thereof, for over one year prior to the filing in the United States Patent Office of the application upon which said patent was issued;

2) Smith is not the first inventor of the subject matter of Patent No. '658;

3) Smith did not himself invent the subject matter of the claims of Patent No. '658;

4) the subject matter of Claim 13 of Patent No. '658 was filed with the United States Patent Office subsequent to plaintiff's examination of defendant's allegedly infringing hardware (the accused device) in violation of 35 U.S.C. § 132;

5) the subject matter of Claim 13 was filed without the requisite oath, pursuant to 35 U.S.C. § 115; or declaration, pursuant to 35 U.S.C. § 25;

6) the subject matter of Patent No. '658 was non-obvious; and,

7) the claims of Patent No. '658 do not "particularly point out and distinctly claim" the alleged invention as required by 35 U.S.C. § 112.

ACME also counterclaimed for attorney's fees pursuant to 35 U.S.C. § 285 and a declaration pursuant to 28 U.S.C. § 2201 that it has neither infringed, contributorily infringed, nor induced infringement of Patent No. '658 and that the patent is invalid and void.

After a bench trial the district court, in a Memorandum Opinion and Order filed January 10, 1977, found that Smith's patent was not infringed by ACME and also that Smith's claim in suit (Claim 13) is invalid. In a judgment filed January 17, 1977, the district court dismissed Smith's complaint and entered judgment for ACME on its counterclaim for a declaratory judgment. However, the district court denied ACME's prayer for attorney's fees. Both sides appealed.

On appeal Smith attacks every factual finding made and conclusion of law reached by the district court in its determination that the accused device did not infringe upon Patent '658 and that Patent '658 was invalid for obviousness. However Smith's objections can be grouped into four categories: that '658 should be presumptively valid, that '658 was not obvious at the time the patent was issued, that '658 achieved a synergistic result, and that the accused device infringed '658. Because this Court holds that '658 is obvious and therefore invalid in light of the pertinent prior art, it is unnecessary to examine the issue of infringement.

Folding door installations are used to provide easily openable and closable enclosures providing maximum access to and through a door opening in which the installation is mounted. Folding doors have the advantage of not requiring excessive room for swinging door movements as is required for a conventionally mounted door. Folding doors or "bifold" doors as they are referred to in the industry, are commonly used in closets. Generally a door is composed of two panels adjacent to each other with the end panel connecting the door unit to the wall by a hinge assembly. Heavy wood has proven unsuitable for use in sliding doors. Although lighter wooden panels and reinforced plastic doors have been used, the supporting hardware and costs of installation and maintenance have been too expensive from both a manufacturing and an installation standpoint. Apparently the hardware art industry felt it desirable to develop pivot assemblies that permitted maximum maneuverability of bifold doors at the least cost. According to Smith, the objective for '658 was to stop doors from popping open, make them easy to adjust and to reduce the cost to a reasonable figure.

THE PATENT IN SUIT '658

As the diagram in footnote seven illustrates, '658 is a bottom pivot assembly composed of an angle bracket L–shaped in profile, a plastic square pivot block which is mounted on top of the bracket, a threaded bolt termed a bottom pivot member (the end of which fits into the opening on top of the pivot block), a nut attached to the bolt located above the end placed in the pivot block's opening and a container for the rest of the bolt called a housing means which is inserted into a hole underneath the edge of the door panel. The housing means has splices on the outside which stabilizes placement inside the door. The bottom pivot member is then screwed into the housing means with the end of the bottom member fitting into the opening of the pivot block.

The manner in which the assembly works together occurs by virtue of a series of serrations (sharp teeth resembling a saw) located on designated parts of the pieces. In the center of the L-shaped angle there is an elongated opening, the edges of which are serrated. These teeth are engaged by the bottom of the pivot block which has a cube-like anchor projection. Near the top of this projection underneath the pivot block, the surface has also been serrated. Once the anchor projection becomes engaged with the teeth in the elongated opening of the bracket, the intertwined teeth lock the position of the entire unit including the door. The door is stabilized in this manner.

Smith maintains that '658 contains a novel supporting function as well as a novel means for adjusting the position of the door both vertically and horizontally. Smith asserts that his patent supports a portion of the door weight and alleviates binding and turning movement forces on the pivotal support system. Vertical adjustment is accomplished because the threads on the bolt (bottom pivot means) permit the bolt to be screwed up into the door inside the housing means. This operation may be performed by hand. Before the manual turning of the bolt, however, the door must be raised to disengage the pivot means from the opening in the pivot block. The serrations on the elongated openings permit horizontal movement by disengaging the pivot means, moving the pivot block to the desired location and putting the pivot means in the pivot block.

We turn now to the questions of presumptive validity, obviousness and synergism and the grounds upon which we agree with, and affirm, the district court's finding that Smith's patent is invalid.

I. THE PRESUMPTION OF VALIDITY

■ Congress has determined that a patent is presumed valid and that the burden of proving invalidity is on the defendant. See 35 U.S.C. § 282. This court has acknowledged that every patent issued by the Patent Office carries, at the outset, a presumption of validity justified by the complexities of patent law and the expertise of the Patent Office. *Bolkcom v. Carborundum Co.*, 523 F.2d 492, 498 (6th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976). The district court's finding that this presumption of validity was entitled to little, if any, weight was premised on the failure of the Patent Office to consider such prior art as the French Patent No. 404.065 and the Moore Patent No. 2,066,994.

Smith attacks the district court's conclusion on the basis that the Patent Office did examine other similar prior patents. He points out that the patent examiner searched the particular classes where the French and Moore patents were located although he failed to specifically cite either of these patents.

Smith contends that the French Patent (No. 404.065) is less pertinent than the bottom pivot assembly patent cited by the Examiner of Smith's patent because the "French patent discloses an adjustment hinge which does not provide for vertical adjustment." This totally ignores the district court's specific finding that the prior art French patent discloses the inter-engagement of teeth by a pivot block with the jamb bracket in an *identical configuration* to that of the Smith patent. Appellant has

cited no authority which even suggests that a party may randomly isolate or, consider at his whim, a particular feature from the prior art and disregard other teachings contained in the prior art. *Application of Mercier*, 515 F.2d 1161, 1165 (C.C.P.A.1975); *In re Umbricht*, 404 F.2d 386, 391, 56 C.C.P.A. 772 (1968). Thus, the fact that the French patent fails to provide for vertical adjustment as does the Smith device is insufficient reason to ignore the "identical configuration" which exists between the two relative teeth inter-engagement with a pivot block. It would seem that this latter feature of the French patent is most relevant to the Smith patent particularly since it was the inter-engagement of the "support means" that facilitated issuance of the patent.

Smith argues that the presence of both the French and·Moore patents in these patent classes searched by the Examiner, Class 16, Sub-Class 105 and 106 should result in a presumption of validity to '658 because the Examiner presumably considered the two prior arts and found them less pertinent than the prior art cited. This view assumes that the Moore and French patent were merely cumulative. However, because the French and Moore patents show exactly the same tooth arrangement that Smith relied upon to show novelty when Claim 13 was amended, we think the present evidence of record, considered as a whole, was sufficient to rebut the presumption of validity which is given to patents issued by the Patent Office. See *Solder Removal Co. v. United States International Trade Comm.*, 582 F.2d 628, 634 (Cust. & Pat.App.1978); *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708 (6th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303 (1975); *Schnadig Corp. v. Gaines Manufac-*

*turing Co., Inc.*, 494 F.2d 383 at 391 (6th Cir. 1974).

## II. OBVIOUSNESS

Under 35 U.S.C. § 103,[8] a patent which is "obvious" to a person skilled in the field is invalid. In this case, the district court declared claim 13 invalid on this ground.

■■ We note that the question of "obviousness" for patent validity is a mixed question of both fact and law. *Dickstein v. Seventy Corp.*, 522 F.2d 1294, 1297 (6th Cir. 1975), *cert. denied*, 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976); *Kolene Corporation v. Motor City Metal Treating, Inc.*, 440 F.2d 77, 81 (6th Cir., 1971) *cert. denied*, 404 U.S. 886, 92 S.Ct. 203, 30 L.Ed.2d 169 (1971); *Kaiser Industries v. McLouth Steel Corp.*, 400 F.2d 36, 41 (6th Cir., 1968) *cert. denied*, 393 U.S. 1119, 89 S.Ct. 992, ·22 L.Ed.2d 124 (1969). In determining whether '658 satisfied the requirement of obviousness pursuant to 35 U.S.C. § 103, the district court properly applied the three-pronged factual standard articulated in *Graham v. John Deere Company*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In *Graham*, the Supreme Court stated that a resolution of the obviousness issue under § 103 necessarily entailed:

· 1. That the scope and content of the prior art be determined;

2. That the differences between the prior art and the claims at issue be ascertained; and

3. That the level of ordinary skill in the pertinent art be determined.

It is only after making these express factual findings that the ultimate question of obviousness should be resolved. *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 280, 96 S.Ct.

---

8. # 103 Conditions for Patentability; non-obvious subject matter. A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject mat-

ter pertains. Patentability shall not be negatived by the manner in which the invention was made. July 19, 1952, c. 950 # 1, 66 Stat. 798.

A more extensive discussion of nonobviousness by this Court may be found in *Eltra Corp. v. Basic, Inc.*, 599 F.2d 745 (6th Cir.) *cert. denied*, —— U.S. ——, 100 S.Ct. 297, 62 L.Ed.2d 308 (1979), and *Nickola v. Peterson*, 580 F.2d 898 (6th Cir. 1978), *cert. denied*, 440 U.S. 961, 99 S.Ct. 1504, 59 L.Ed.2d 774 (1979).

1532, 47 L.Ed.2d 784 (1975); *Graham v. John Deere Co., supra.* Furthermore as reiterated in *Reynolds Metal Co. v. Acorn Bldg. Components, Inc.,* 548 F.2d 155 (6th Cir. 1977), once the district court makes the inquiries mandated in *Graham v. John Deere Co.,* those findings are binding on appeal unless clearly erroneous.

█ Guided by the *Graham* test the District Court found:

1) that the scope of the prior art was shown by several prior patents and bottom pivot assembly devices;

2) that the allegedly distinguished manner in which the teeth of the pivot block interengaged the teeth on the bracket is a feature found in at least three other patents or devices;

3) that one of the distinguishing features of the Smith patent required only a reversal of parts from a prior art and that this reversal would clearly be obvious to one of ordinary skill in the art of bifold door hardware;

4) that "each of the claim elements of the Smith patent is obvious from prior art" and the "record is devoid of any evidence" that this assemblage of old elements produced a synergistic result in function or consequence.

Because an examination of the record disclosed sufficient evidence for us to conclude that the district court's findings of fact were not clearly erroneous, we affirm the district court's conclusions that '658 fails to satisfy the requirement of nonobviousness under 35 U.S.C. § 102.

What is taught by the prior art is of paramount importance to the determination of obviousness in this patent litigation. This is particularly true because Smith concedes that '658 is a grouping of known elements (combination patent).

As an indication of how obvious these folding door brackets were, defendant ACME cited during the trial five other patents similar to the one in issue here as evidence of prior art:

Kirby Patent No. 3,187,800 (issued June 1965);

Kellems-Boydolf Patent No. 3,597,790 (issued August 1979);

French Patent No. 404.065 (issued November 1909);

Moore Patent No. 2,066,994 (issued April 1935);

Ekco Pivot Simpson Patent No. 3,328,832 (issued July 1967).

In addition, ACME cited two bottom pivot assemblies by its employees Campbell and Kwiatkoski. The District Court's comparison of the similar features of the prior art to that of the Smith patent is instructive:

The Kirby and Kellems patents and the Ekco device each disclose bottom pivot assemblies for bifold or folding doors performing the same function in substantially the same manner as the Smith device: each has an L-shaped jamb bracket, a plastic pivot block with a cylindrical socket on its upper surface, and a pivot pin with a cylindrical end to engage the socket and threading on the opposite end to engage a sleeve to be inserted in the lower edge of the door. Moreover, vertical adjustment in each is accomplished by rotating the pivot pin to different lengths, while the door is horizontally adjusted by re-engaging the pivot block in the proper position on the jamb bracket. Indeed, the sole distinction between the Smith patent and the Kirby, Kellems and Ekco devices is the manner in which the pivot block engages the jam bracket.[9]

---

9. In light of the prior art it is. ludicrous to suggest that the manner in which the Smith patent engages the teeth should be sufficient to satisfy the nonobvious requirement of # 103. Intricate details of Smith's method of teeth engagement need not be discussed again. (See discussion *supra.*) However consideration of the other methods for teeth engagement by prior art is appropriate. In the Ecko patent the jamb has a row of teeth along both outside

edges of the arm. On the pivot block there are inwardly facing teeth on the edges of the rim around the three sides of the pivot block. These inwardly-facing vertical teeth on the underside of the pivot block mate with the teeth on the two outside edges of the bottom ledge of the jamb bracket.

Similarly, the Kirby jamb bracket also shows the inter-engagement of teeth in the pivot block and teeth in the jamb bracket. In the Kirby

Prior art references most often relied upon to show obviousness are listed in § 102(a)—prior knowledge or use, prior patents, and prior publications.[10] However, the listing in § 102 is not exhaustive since even unworkable devices form a part of the teachings of prior art.[11]

Furthermore, Smith acknowledged that the threaded pin used in connection with his "novel" means for vertically adjusting the positioning of the doors within the door openings, differed from Kellems only in that Kellems require a wrench for adjustment and Smith could accomplish the same adjustment manually.

■ Prior art need not be exactly the same in order to be applicable; differences between the prior art and the invention are permitted. This is to say that the mere existence of differences between the prior art and an invention does not establish the invention's nonobviousness, particularly where, as here, the prior art and the invention are substantially similar. *Dann v. Johnston*, 425 U.S. 219, 229–230, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976).

Given the detailed comparison of prior art references by the District Court, we point out that the object and the accompanying claims as well as the inferences one skilled in the art would draw from such specific disclosures, properly constitute prior art. In fact, "The prior art is all the knowledge that would have been available to any person having ordinary skill in the art." *Steelcase, Inc. v. Delwood Furniture*

*Co.*, 578 F.2d 74 (5th Cir. 1978), *cert. denied*, 440 U.S. 960, 99 S.Ct. 1503, 59 L.Ed.2d 773 (1979). After our view of the many references, the fact that Smith could still find yet another new position for the old elements (taught by prior art), is the only aspect of '658 that even approaches innovation.

## III. SYNERGISM

■ A device might be composed of various well known components put together in such a way as to form something unique and patentable. This approach of combining known materials to achieve a unique product is called "synergism."

Any definition of synergism necessarily varies depending on whether the particular claim in issue is for a process, a formula, or a utility patent. Courts have roughly defined synergism as when the "whole in some way exceeds the sum of its parts," when the combination produces a "new or different function," or "unusual or surprising consequences." *Philips Industries Inc. & Mobil Temp., Inc. v. State Stove & Manufacturing Co., Inc.*, 522 F.2d 1137 (6th Cir. 1975).

■ Smith relies on two features of '658 in support of his argument that the patent-in-suit realizes a synergistic result. Feature Number 1 is the inter-engagement of the teeth on the support block with the teeth on the jamb bracket which provides a simple, inexpensive and adjustable system for securely mounting the door. (Emphasis in Appellant's brief at 29.) In our opinion

---

patent, the entire underside of the pivot block has teeth. These teeth mate with the teeth on the jamb bracket, the latter being located inside and composing the floor of the jamb bracket. (*See Defendant's exhibit Q.*) While the above teeth engagements are not identical to '658, certainly the basic idea for the teeth arrangement is sufficiently present to nullify any claim of nonobviousness.

10. § 102. Conditions for patentability; novelty and loss of right to patent—A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

35 U.S.C. § 102(a)(b) (1952). [Patents reproduced as Appendix D]

11. It has been stated that the prior art that is relevant in evaluating a claim of obviousness is defined by the nature of the problem confronting the would be inventor. *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963 (7th Cir. 1979).

this result "of securely mounting the door" is in substance no different from that result derived from other prior art.[12] Rather it is precisely because the other prior art performs substantially the same function as '658 that '658 is obvious under § 103.

Feature Number 2 is the clearance space under the slot by which the elevation maintains the interengaging teeth free from obstruction by a carpet and also provides a trap into which dirt and lint will fall so that the teeth in the slot do not become clogged. Although it is true that none of the prior art incorporates Feature Number 2, the clearance space, as does the Smith patent, this modification hardly provides that "impalpable something" from the combination itself that would render the invention non-obvious and valid. *Philips Industries v. State Stove & Mfg. Co., Inc., supra.* Rather we are persuaded that the so-called "clearance space" would be obvious to any person possessing the ordinary skill of one familiar with the art. Testimony in the trial court indicated that at the time of the invention, the average person in the hardware art possessed a degree in engineering and five years experience in the field. Certainly a modification of this limited nature is within the grasp of such an individual.[13]

We understand that the purpose of the synergistic theory is to enable an inventor to patent an idea when the elements of the idea are commonly known but the combination in which the inventor has arranged the configuration contributes new knowledge to

the specified field of art. *Nickola v. Peterson,* 580 F.2d 898, 910–911 (6th Cir. 1978) *cert. denied,* 440 U.S. 961, 99 S.Ct. 1504, 59 L.Ed.2d 774 (1979); *Philips Industries v. State Stove & Mfg. Co., Inc.,* 522 F.2d 1137 (6th Cir. 1975). However, courts have scrutinized very carefully combination patents to avoid a flood of the garden-variety but not patentable "good ideas." This approach follows the teaching of *Anderson's-Black Rock v. Pavement Co.,* 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). The Supreme Court recently applied stringent standards when examining a combination patent in *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 282, 96 S.Ct. 1532, 1537, 47 L.Ed.2d 784 (1976). In *Sakraida,* the patent constituted a combination of old elements to produce an abrupt release of water directly on a barn floor from storage tanks. This water was then used to clean animal waste from barns. Reversing the Court of Appeals' finding that the combination patent yielded a synergistic result, the Supreme Court stated ". . . this patent simply arranges old elements with each performing the same function it had been known to perform, although perhaps producing a more striking result than in previous combinations. Such combinations are not patentable under standards appropriate for a combination patent . . . ." *Sakraida v. Ag Pro, Inc., supra.*[14]

In *Republic Industries, Inc. v. Schlage,* 592 F.2d 963, 967–972 (7th Cir. 1979), Judge Swygert discussed the application of synergism to combination patents. After noting

---

12. As demonstrated earlier the utilization of teeth engagement occurs in several of the cited prior art. *See* n. 9 *supra.*

13. It should be added that this average person in the hardware art possessing a degree in engineering and five years experience in the field is a "legal ghost" "(like the 'reasonable man' ghost in negligence cases)." *Nickola v. Peterson,* 580 F.2d 898, 910–911 (6th Cir. 1978), *cert. denied,* 440 U.S. 961, 99 S.Ct. 1504, 59 L.Ed.2d 774 (1979).

14. Smith's assertion that his "clearance" space and novel means of securely mounting bifold doors constitute a more striking result than ever achieved adds nothing that was not obvious. *See Herschensohn v. Hoffman,* 593 F.2d 893, 896 (9th Cir. 1979). Given the "blight" on free commerce which results from an invalid

patent, courts have and will continue to scrutinize very carefully these so-called innovative ideas. *See Hieger v. Ford Motor Co.,* 516 F.2d 1324 (6th Cir. 1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976).

One result of the Patent Offices' issuance of patents for, mere technical modification, such as occurred here, is that the innovative technician may then bargain his "patent" in the event larger business concerns profitably adopt his modification. This obsession to issue patents, however laudatory, results in numerous judicial findings of patent invalidity. Courts, properly so, refuse to stretch § 103 out of proportion. If the legislature solved this problem, the Patent Office would be less driven to issue patents for mere technical modifications and courts would hold fewer patents invalid.

two theoretical flaws with the application of this concept, he concluded that synergism has "prevented the development of a consistent, predictable body of law under § 103," and that "because the concept [synergism] does not bear any ipso facto relationship to obviousness, the term has little, if any, utility."[15] Judge Swygert aptly points out that it is the act of selection which must be nonobvious in order for the combination patent in issue to satisfy the standards of § 103. In his view, absent additional guidance from the Congress or the Supreme Court, the three pronged 1966 Graham analysis should serve as the *exclusive means* to measure obviousness. *Id.*, 383 U.S. at 17, 86 S.Ct. 684.

We agree that definitional deficiencies, theoretical flaws and judicial application of synergism have contributed to muddy the patent waters.[16] It seems apparent from the *Black Rock* and *Sakraida* decisions that the Supreme Court has recognized synergism to a limited extent as a term symbolizing the more stringent standard for combination patent claims.[17] When confronted with a combination patent this standard requires an isolation of that unique essence of the combination and a determination of whether that essence makes an authentic contribution to mankind's store of knowledge. Unquestionably this standard was not meant to reduce emphasis on the *Graham* analysis for obviousness under § 103. If we understood synergism to require such, synergism would be tossed aside immediate-

ly. Rather, it is merely a symbolic reminder of what constitutes nonobviousness when a combination patent is at issue.

We hold in this case that a synergistic result has not been shown in '658. The assembly of old elements to produce the two features isolated by Smith simply lacks the unique essence of authentic contribution to the bifold hardware art. It therefore fails to meet the obviousness standard under § 103 for combination patents as suggested by the *Black Rock* and *Sakraida* decisions.

## V. CONCLUSION

█ We conclude as did the District Court that '658 lacks the unique essence to surmount the more stringent standard required of a combination patent. *Anderson's Black Rock, supra; Sakraida, supra.* Therefore '658 is invalid for obviousness.

█ In considering ACME's requests for attorney fees' the District Court found the record devoid of the requisite unfairness, bad faith, inequitable or unconscionable conduct on the part of Smith, and concluded that an award of attorney fees was unwarranted. This determination is fully supported by the record and the law. See *Eltra Corp. v. Basic, Inc.*, 599 F.2d 745, 756 (6th Cir. 1979).

The judgment of the District Court is in all respects affirmed. The costs of this appeal are assessed against the appellant.

Appendix A to follow.

---

**15.** The major objection in applying synergism is that "one is required to look solely to the operation of the elements after they are combined." *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 971 (7th Cir. 1979). Two problems result from this approach: "a test which looks exclusively to the functioning of the individual components after they are combined must necessarily be premised on the assumption that it is always obvious to take known elements and combine them" *Id.* This would appear to contradict # 103 which "compels the courts to view the invention from the vantage point of the field of art at the time the invention was made. . . . ."

Because synergism centers exclusively on the performance of the elements after combination and without regard to the obviousness or nonobviousness of making the combination, synergism does not comport with the *Graham* man-

date to apply § 103." *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 971 (7th Cir. 1979).

**16.** *See e. g. Nickola v. Peterson*, 580 F.2d 898, n. 22 at 913 (6th Cir. 1978), *cert. denied*, 440 U.S. 961, 99 S.Ct. 1504, 59 L.Ed.2d 774 (1979).

**17.** In addition to the teachings of *Sakraida* and *Anderson Black Rock*, two Supreme Court justices have made specific reference to a synergistic result. "Thus, to be patentable, a combination of elements must produce something more than the sum of the pre-existing elements; there must be a *synergistic result* that is itself nonobvious[ness]." *Roanwell Corp. v. Plantronics, Inc.*, 429 U.S. 1004, 1006, 97 S.Ct. 538, 539–40, 50 L.Ed.2d 617 (1976) (White & Brennan, JJ., dissenting).

1096

# United States Patent [19]

Smith

Footnote 3

[11] 3,866,658

[45] Feb. 18, 1975

**PIVOTAL SUPPORT AND GUIDE HARDWARE FOR FOLDING DOORS**

Inventor: Lester L. Smith, 230 W. Monroe St., Suite 2040, Tucson, Ariz. 60606

Filed: **Jan. 28, 1974**

Appl. No.: **436,961**

U.S. Cl................... 160/206, 160/118, 16/151, 16/87 R, 16/93 R, 16/95 R, 16/130, 16/132, 16/169 R, 85/33
Int. Cl............................................. E05d 15/26
Field of Search.............. 16/87 R, 87.2, 87.4 R. 16/91, 93 R, 95 R, 102, 105, 106, 129, 130, 131, 132, 151, 169, 185; 160/206, 118; 85/33

### References Cited

UNITED STATES PATENTS

| | | | |
|---|---|---|---|
| 3,187,800 | 6/1965 | Kirby | 160/206 |
| 3,233,657 | 2/1966 | Kirby | 160/206 |
| 3,328,832 | 7/1967 | Gimpson et al. | 16/151 |
| 3,400,627 | 9/1968 | Raynovich | 85/33 |
| 3,410,330 | 11/1968 | Matyas | 160/206 |
| 3,597,790 | 8/1971 | Kellems | 16/151 |

Primary Examiner—Richard J. Scanlan, Jr.
Attorney, Agent, or Firm—Davis, McCaleb & Lucas

### ABSTRACT

Pivot and guide hardware assemblies adapted to low cost production and suited for use in supporting planar panels, particularly in folding door installations and the like, for pivotal swinging movements relative to one another and to and from coplanar relationship in a door opening; the hardware assemblies having housing means constituting plug-type mounting portions insertable into and quickly securable within precisely located bored openings formed in the panel edges to minimize production and installation costs and to effect proper operating positioning and alignment of the hardware. The pivot hardware assemblies are coaxially aligned adjacent the top and bottom edge portion of one of each pair of hingedly interconnected panels and include means for vertical and lateral alignment adjustment of the panels within the door opening while the edge region of the unpivotally supported panel of a pair thereof, remote from the hinge axis therebetween, is movably joined to a guide track or rail by a guide assembly movable linearly along the track and capable of resiliently supporting the panel assembly from the guide track.

**13 Claims, 13 Drawing Figures**

PLAINTIFF'S EXHIBIT

NO. 1

APPENDIX B
Footnote 4

ACME'S PRESENT
PIVOT ASSEMBLY

ACME'S PRESENT
PIVOT ASSEMBLY

PLAINTIFF'S
EXHIBIT
NO. 3

## APPENDIX C

*FIVE PIECE BOTTOM PIVOT* Footnote 7 *THREE PIECE BOTTOM PIVOT*

*SLEEVE OR HOUSING* ← →

*PIVOT PIN* ← →

*LOCK NUT* ←

*PIVOT BLOCK* ←

*JAMB BRACKET* ← →

DEFENDANT'S
EXHIBIT
CT

APPENDIX D

Footnote 10

EKCO PIVOT
SIMPSON PATENT
3,328,832

EKCO PIVOT
SIMPSON PATENT
3,328,832

1100 

KIRBY PATENT
3,187,800

KIRBY PATENT
3,187,800

Teeth

*KIRBY*
*3,187,800*

*SMITH*
*3,866,658*

*FIG.2&3*

*FIG.9&10*

*MOORE 2,066,994*

DEFENDANT'S EXHIBIT

C U